IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
LOLA BOUCHARD, et al.,          :      CONSOLIDATED UNDER
                                :      MDL-875
          Plaintiffs,           :
                                :      Transferred from the Western
     v.                         :      District of Washington
                                :      (Case No. 11-00458)
CBS CORPORATION, et al.,        :
                                :      E.D. PA CIVIL ACTION NO.
          Defendants.           :      2:11-CV-66270-ER
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          APRIL 17, 2012

        Before the Court are Plaintiffs' Motion to Expedite
Remand and Motion for Remand, wherein Plaintiffs assert first
that this Court lacks jurisdiction over this matter and second
that Defendant Lockheed Shipbuilding Corporation's removal under
the federal officer removal statute was untimely and improper.
For the following reasons, the Court finds that it does have
jurisdiction over this matter and that Defendant's removal was
both timely and proper.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

        Plaintiffs Lola and Michael Bouchard filed this
lawsuit on September 13, 2010, in King County Superior Court in
the State of Washington, alleging that the Defendants, including
Lockheed Shipbuilding Company, are liable for Mrs. Bouchard's

1

alleged asbestos-related injuries that she suffered as a result of her former husband's exposure to asbestos products at work. The case was removed to the Western District of Washington by Defendant General Electric Company, but then remanded after Plaintiffs settled with General Electric Company.

On March 16, 2011, Defendant Lockheed Shipbuilding Company filed its notice of removal in the Western District of Washington, based on deposition testimony of Plaintiffs' witnesses, which would support removal under federal officer jurisdiction. On March 24, 2011, Plaintiffs filed a motion to remand the case to King County Superior Court.

On May 20, 2011, the United States Judicial Panel on Multidistrict Litigation (the "Panel") signed a Transfer Order transferring this case to the Eastern District of Pennsylvania. Transfer Order 2, Pls.' Mot. for Remand & Mot. to Expedite Ex. C, ECF No. 4 [hereinafter Pls.' Mot for Remand I]. The Panel's Transfer Order was filed with the transferee court, the Eastern District of Pennsylvania, under its MDL 875 Docket on May 23, 2011. See MDL Transfer Order, No. 01-md-00875-ER (E.D. Pa. May 23, 2011), ECF No. 7889.

On May 23, 2011, the Honorable Richard A. Jones of the U.S. District Court for the Western District of Washington signed an order granting Plaintiffs' Motion to Remand, which remanded the matter to the King County Superior Court. Remand

Order, Pls.' Mot. for Remand I Ex. D. However, Judge Jones' order was only filed on May 24, 2011. ECF Notification of Judge Jones' Order, Def.'s Opp'n to Pls.' Mot. to Remand 4 Ex. 4, ECF No. 5 [hereinafter Def.'s Opp'n I].

On May 26, 2011, Plaintiffs filed in this Court a motion to expedite remand and a motion for remand pursuant to Judge Jones' Order remanding the case to state court. Pls.' Mot. for Remand I. Plaintiffs contend that this Court lacks jurisdiction over this matter because the transfer order was not effective until May 24, 2011, when this Court entered an order implementing the Panel's transfer order. See Transfer Order No. 1004, ECF No. 1.

As the parties have fully briefed the issues relevant to Plaintiffs' expedited motion to remand the case to the King County Superior Court based on Judge Jones' May 23, 2011 order as well as the motion for remand on substantive grounds, the motions are now ripe for disposition.

## II.  MOTION TO EXPEDITE REMAND

Plaintiffs seek an expedited ruling of remand to the King County Superior Court based on Judge Jones' order remanding the case to state court. Pls.' Mot. for Remand I 1. Plaintiffs argue that the Panel's May 20, 2011, Transfer Order was not filed with the transferee district court until May 24, 2011.

Pls.' Reply 2, ECF No. 7 (citing to Transfer Order No. 1004, ECF No. 1). As Judge Jones' order granting Plaintiffs' motion to remand was granted May 23, 2011, Plaintiffs argue that Judge Jones' order governs this case and thus the case should be remanded immediately to state court in accordance with Judge Jones' order. Id.

Defendants counter that the Panel's Transfer Order was filed with the transferee district court, the Eastern District of Pennsylvania, under its MDL 875 Docket on May 23, 2011. Def.'s Opp'n I 3 (citing to MDL Transfer Order, No. 01-md-00875-ER (E.D. Pa. May 23, 2011), ECF No. 7889). This Court then assigned the case an individual case number and implemented the Panel's previously filed transfer order on May 24, 2011. See Transfer Order No. 1004, ECF No. 1. Defendants further argue that while Judge Jones signed the remand order on May 23, 2011, the order was only filed and entered at 2:34 p.m. on May 24, 2011. ECF Notification of Judge Jones' Order, Def.'s Opp'n I Ex. 4.

The issue is whether the Panel's transfer order was effective before Judge Jones issued his order remanding the case to state court. As the Panel recognized,[1] Congress answered this

_____

[1] On June 6, 2011, Defendant requested that the Panel clarify the jurisdictional status of the above-captioned matter. Def.'s Mot. for Clarification, ECF No. 9. The Defendant requested that the Panel determine and decide the efficacy of its own May 23, 2011

4

question in the Panel's governing statute, which clearly states
that orders of transfer shall be effective the moment it is
filed with the office of the clerk of the transferee district
court.

Under the Panel's governing statute, "[o]rders of
transfer and such other orders as the panel may make thereafter
shall be filed in the office of the clerk of the transferee
district court and shall be effective when thus filed." 28
U.S.C. § 1407(c)(ii); see also Panel Rule 2.1(d) ("An order to
transfer or remand pursuant to 28 U.S.C. § 1407 shall be
effective only upon its filing with the clerk of the transferee
district court."). Once an order of transfer is entered the
transferor court is deprived of jurisdiction until the case is
returned to the transferor court. See, e.g., In re Upjohn Co.
Antibiotic Cleocin Prods. Liab. Litig., 664 F.2d 114, 118 (6th

---

order by clarifying whether it superseded the transferor court's
remand order. Plaintiffs responded that the Panel's order did
not supersede Judge Jones' order because the transferor court
filed its order before the Eastern District of Pennsylvania
entered an order stating that the effective date of transfer was
May 24, 2011. Pls.' Response to Def.'s Mot. for Clarification,
ECF No. 11.

On June 17, 2011, the Panel decided that their transfer
order with respect to this case was filed in the transferee
district the day before the Western District of Washington
issued its remand order. Panel's Decision 1, ECF No. 15. The
Panel thereby held that their order remained in effect and that
Plaintiffs were free to re-raise their remand motion to this
Court. Id. at 2.

Cir. 1981). As the transferor court cannot take further authoritative action in the case, any orders entered after the transfer order is filed in the transferee district are rendered moot. See Baycol Prods. Liab. Litig., 269 F. Supp. 1376, 1377 (J.P.M.L. 2003) (finding that where the filing, in the transferee district, of a Panel order preceded, by a day, the filing in the transferor district of an order remanding the action to state court, the remand order was "moot when entered," even though it had been signed the previous day). However, prior to the effective date of a transfer order, the pendency of a transfer order "does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court." Panel Rule 2.1(d).

The Judicial Panel on Multidistrict Litigation agreed with Defendants that Judge Jones' order was moot[2] when entered because the Panel's transfer order was filed in the transferee district the day before the Western District of Washington court issued its remand order.[3] Panel's Decision 1. This Court reaches

---

[2] The Court questions whether "moot" appropriately captures the status of an order filed by a court without proper jurisdiction. A more appropriate characterization is that the order was void when entered for lack of subject matter jurisdiction. However, as the Panel has employed "moot" in previous decisions, this Court will abide by previous terminology.

[3] As the Court's resolution of Plaintiffs' Motion to Expedite

the same conclusion. The mandate of section 1407(c)(ii) defines the date the transfer order was entered as May 23, 2011, or the date in which the office of the clerk of the Eastern District of Pennsylvania filed the order on the MDL 875 docket.[4] As Judge Jones' order was filed on May 24, 2011, the transferor court no longer had jurisdiction over the case and thus the remand order was moot when entered. Accordingly, this Court will deny Plaintiffs' motion to expedite remand because this Court obtained jurisdiction over this matter on May 23, 2011.

### III. MOTION TO REMAND

Given that the Court finds it has jurisdiction to adjudicate Plaintiffs' Motion to Remand, the Court turns next to

---

Remand aligns with the Panel's resolution of this matter, the Court need not address whether jurisdiction over the effectiveness of the Panel's transfer order remains with the Panel or with this Court.

[4]  The Court considered Plaintiffs' argument that this Court issued an order on May 24, 2011, which directed the Eastern District of Pennsylvania clerk to initiate the procedures for transfer of the action and stated that "the effective date of transfer is upon entry of this order." See Transfer Order No. 1004, ECF No. 1. However, Plaintiffs misapprehended the scope of this Court's order because the order does not reflect this Court's power to transfer the case or to render the Panel's transfer order effective. The Panel pursuant to its governing statute transferred this case to the Eastern District of Pennsylvania to be consolidated into MDL-875. This Court's order simply implemented the previously filed transfer order from the Panel. The Court recognizes that the language stating that the transfer was "effective" as of May 24, 2011, could be confusing, nonetheless, that language cannot trump the mandate of section 1407(c)(ii).

the procedural and substantive arguments contained in Plaintiffs' Motion to Remand.

In Plaintiffs' Motion to Expedite Remand, Plaintiffs incorporated by reference the briefings from both parties on the motion for remand, which they filed in the Western District of Washington.[5] Pls.' Mot. to Remand I 7. Plaintiffs proffer two grounds for remanding this case to King County Superior Court. First, Plaintiffs contend that Defendant Lockheed Shipbuilding's removal was untimely. According to Plaintiffs, Defendant should have removed this case within 30 days after receiving Plaintiffs' interrogatory response stating that Plaintiff Lola Bouchard's former husband worked on "ships" while employed by Defendant. Second, Plaintiffs argue that federal officer removal jurisdiction does not exist because Defendant never averred facts demonstrating that it is entitled to a defense based on derivative sovereign immunity nor did it establish a causal nexus between Plaintiffs' claims and the acts performed under color of federal law to justify removal based on the government contractor defense. See Pls.' Mot. to Remand 12-16, ECF No. 14 [hereinafter Pls.' Mot to Remand II].

Defendant responds first that it properly and timely

---

[5]  Defendant questions whether this incorporation by reference constitutes a proper filing and objects to Plaintiffs' action. The Court considers the filing proper because Plaintiffs included the documents as exhibits to their pleadings.

removed this case to federal court within 30 days of learning that Plaintiffs' allegations related to the construction and repair of military ships. Defendant further argues that it has established a defense based on derivative sovereign immunity and that it constructed and repaired military ships under the direction of the federal government, which satisfies removal based on the government contractor defense.

A.   <u>Timeliness</u>

Plaintiffs allege that Plaintiff Lola Bouchard's first husband, Ron Berger, worked with asbestos-containing products at Lockheed Shipbuilding in the 1970s. Pls.' Compl. ¶ 2(B), Def.'s Opp'n to Mot. to Remand Ex. 1, ECF No. 10 [hereinafter Def.'s Opp'n to Mot. to Remand II]. Plaintiffs' Complaint does not identify the types of ships on which Mr. Berger worked, nor does it state whether such ships were built for the federal government. <u>See</u> <u>id.</u>

On September 29, 2010, Defendant stated at page 7 of its Answer to Supplemental Complaint for Personal Injury in this case:

> 38.   <u>Compliance with Government/Employer Contract Specifications</u>. Any asbestos-containing equipment or products manufactured, supplied, furnished, sold or used at Lockheed were in compliance with specific contract specifications with plaintiff Lola Bouchard's employers, and/or the federal government, and such compliance is a complete bar to plaintiffs' claims against Lockheed.

39.  <u>Government Contractor Defense</u>. Any asbestos-
containing equipment or products manufactured,
supplied, furnished, sold or used at Lockheed were in
compliance with mandatory government contract
specifications, and such compliance is a complete bar
to plaintiffs' claims against Lockheed.

Def.'s Answer ¶¶ 38-39, Pls.' Mot. to Remand I Ex. B.1, 23-36.

On November 4, 2010, Plaintiffs answered Interrogatory

No. 2 of Defendant Lockheed's first set of discovery requests at

page 4 as follows:

ANSWER: Ms. Bouchard was exposed during 1976 to 1979
to asbestos from equipment or products that were
designed, manufactured, sold or distributed by
Lockheed by regularly washing the clothes of her
husband Ronald Berger who worked at Lockheed as a
shipscaler. Mr. Burger was exposed to asbestos at
Lockheed while ships were repaired or newly
constructed by Lockheed. Discovery continuing.

Pls.' Resp. to Interrogatories 4, Pls.' Mot. to Remand I Ex.

B.2, 38-41.

Plaintiffs argue that, pursuant to 28 U.S.C. §

1446(b)(3), Defendant's second 30-day window for removal began

November 4, 2010.[6] As Defendant failed to remove this case until

---

[6]  Judge Jones' Order found that Defendant's removal clock began
running on September 29, 2010, when Defendant filed its answer
containing the above quoted affirmative defenses. Judge Jones'
Order, Pls.' Mot. to Remand I Ex. D. Specifically, Judge Jones
found that "Lockheed could not have legitimately asserted a
government contractor defense in September 2010 without some
belief that the liability at issue in this case related to work
conducted pursuant to federal contract. Because it asserted the
government contractor defense before learning of the February
2011 deposition testimony, that deposition testimony was not
necessary to Lockheed's understanding of the potential for

March 16, 2011, Plaintiffs argue that the case should be remanded to state court.

In rebuttal, Defendant contends that Plaintiffs' answers to Defendant's interrogatories were devoid of any information regarding the types of ships at issue, stating only that Mr. Berger '"was exposed to asbestos at Lockheed while ships were repaired or newly constructed by Lockheed."' Def.'s Opp'n to Mot. to Remand II 3. Defendant contends that it first received notice that Mr. Berger worked on Lockheed Shipbuilding manufactured military vessels on February 22, 2011, when witness David Ludden testified at deposition that Mr. Berger worked on two such Military ships—-the USS Frank Cable and the USCGC Polar Star. Ludden Dep. 13:21-14:23, Def.'s Opp'n to Mot. to Remand II Ex. 6.

The timeliness of removal is an issue of federal law. In re Asbestos Prods. Liab. Litig. (No. VI), 770 F. Supp. 2d 736, 739 (E.D. Pa. 2011); 28 U.S.C. § 1442(a). In the context of a Multidistrict Litigation case, issues of federal law are governed by the law of the circuit in which the MDL court sits. In Re Asbestos Prods. Liab. Litig. (Oil Field Cases), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009) ("[I]n cases where jurisdiction is based on federal question, this Court, as the

_____

claims based on work performed pursuant to federal contracts. . . . Thus, the case was removable on September 29, 2010, at the latest." Id. at 4.

transferee court, will apply federal law as interpreted by the Third Circuit."). Therefore, the Court will apply Third Circuit precedent to determine whether or not Defendant's notice of removal was timely.

The federal officer removal statute provides that a notice of removal must be filed within thirty (30) days of a defendant's receipt of the initial pleading or, "[i]f the case stated by the initial pleading is not removable," within thirty days after defendant's receipt of "an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b). The first thirty-day window for removal is only triggered when "the four corners of the pleading . . . informs the reader, to a substantial degree of specificity, [that] all the elements of federal jurisdiction are present." Foster v. Mutual Fire Marine & Inland Ins. Co., 986 F.2d 48, 53 (3d Cir. 1993), rev'd on other grounds, Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999); In re Asbestos Prods. Liab. Litig. (No. VI), 770 F. Supp. 2d at 740. In Foster, the Third Circuit established that the analysis for determining whether the four corners of the pleading is sufficient is an objective one: "the issue is not what the defendant knew, but what the relevant document said." 986 F.2d at 53.

In the instant case, Defendant invokes the second

timeframe, arguing that the case was not removable on the face of Plaintiffs' initial complaint or through information contained in Plaintiffs' responses to Defendant's special interrogatories, but that deposition testimony identified, for the first time, that the claims against Defendant arose from Ron Berger's work on military ships at Defendant's work site. Def.'s Opp'n to Mot. to Remand II 8. Plaintiffs respond that Plaintiffs' Responses to Defendant's special interrogatories in conjunction with Defendant's answer put Defendant on notice of the potential removability of the case. Pls.' Mot. to Remand II 4-6.

The parties do not dispute that the issue with respect to the timeliness of removal is when the second thirty-day window was triggered. Defendant insists that the four-corners analysis developed in <u>Foster</u> for initial pleadings should also apply to the second thirty-day window, and that contrary to Plaintiffs' argument, nothing within the "four corners" of their interrogatory answers gave notice that Plaintiffs sought liability against Defendant for actions taken to a federal officer's directions. Plaintiffs, on the other hand, argue that the test for the second thirty-day window is based on different statutory language and that "may be ascertained" is inconsistent with the test that everything a Defendant needs to know to remove must be contained within the four corners of a document.

13

The Third Circuit has not reached the issue of what test or standard applies to assess when the second thirty-day window is triggered. However, in light of Foster, removal inquiries should be confined to "court-related documents" and not involve courts "in arduous inquiries into [a] defendant's state of mind." 986 F.2d at 53. In reaching its opinion, the Third Circuit reasoned that the focus should be on relevant court documents analyzed objectively to allow for prompt removal and to prevent courts from getting bogged down by intricate analyses of the nature of defendant's knowledge at critical times relevant to whether removal was timely. While Foster's holding only applies to what court documents are sufficient to constitute an "initial pleading" pursuant to § 1446(b), thus triggering the first thirty-day window, the reasoning and analysis employed by the Third Circuit are equally applicable to when a Defendant could "ascertain" that the case is one which is or has become removable. Accordingly, the second thirty-day window requires defendants to file their notices of removal within thirty days after receiving an "an amended pleading, motion, order or other paper," which on its face or in conjunction with previous court-related documents provides Defendant with adequate notice of federal jurisdiction.

Unlike with the initial pleading, the inquiry does not begin and end with the four-corners of the pleading, because the

14

statute contemplates that a court-related document might provide the missing operative puzzle piece for a defendant to ascertain that the case "has become" removal. While a defendant may ascertain that an action is removable based on a variety of court-related documents following the initial pleading, the analysis of the documents necessary to trigger § 1446(b) remains an objective one: "the issue is not what the defendant knew, but what the relevant document[s] said." 986 F.2d at 53.

Here, Defendant claims that the second thirty-day removal clock did not start running until it received court-related documents, which contained facts sufficient to support each jurisdictional element necessary to support federal officer jurisdiction. Def.'s Opp'n to Mot. to Remand II 7 (citing Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006)). See also Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 782 (E.D. Pa. 2010) ("[A] defendant is entitled to removal under Section 1442(a)(1) where the defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense."). Defendant must therefore have had sufficient information to show: (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under

15

color of a federal office. <u>Hagen</u>, 739 F. Supp. 2d at 776 (citing <u>Feidt v. Owens Corning Fiberglas Corp.</u>, 153 F.3d 124, 127 (3d Cir. 1998)); <u>see also</u> <u>Jefferson Cnty. v. Acker</u>, 527 U.S. 423, 431 (1999). Defendant contends that until Mr. Ludden testified that Mr. Berger worked on two military ships, Defendant did not have notice that Plaintiffs sought liability against Lockheed Shipbuilding for actions taken pursuant to a federal officer's direction.

Plaintiffs counter that Defendant was able to ascertain from Plaintiffs' interrogatories that it had a colorable federal defense even without knowing the specific ships that Ms. Bouchard's husband worked on. The reason is because Defendant, as expressed through its answer at paragraph 38, stated that: "any asbestos . . . used at Lockheed [was] in compliance with specific contract specifications with . . . the federal government and such is a complete bar to plaintiffs' claims against Lockheed." Pls.' Mot. to Remand II 6.[7] Plaintiffs state that according to Defendant's answer, every piece of asbestos used by Defendant was in compliance with specific

---

[7] The language of the answer also states that "any asbestos-containing equipment or products manufactured, supplied, furnished, sold or used at Lockheed were in compliance with specific contract specifications with plaintiff Lola Bouchard's employers." Def.'s Answer ¶ 38. However, Plaintiffs argue, and Defendant does not dispute, that Ms. Bouchard is not claiming any asbestos exposure from her "employers" since all of the asbestos exposure alleged was "household" exposure from her father or husband. Pls.' Mot. to Remand II 6.

federal government contracts and thus, "any" of Ms. Bouchard's asbestos exposure from Lockheed gave rise to a federal defense. Id. From this, Plaintiffs insist that it necessarily follows that when Defendant learned on November 4, 2010, through Plaintiffs' interrogatory response, that Ms. Bouchard was exposed to asbestos because her former husband worked on "ships" while employed by Defendant, that Defendant could ascertain that the case had become removable.

Defendant replies that the fact that Defendant asserted a government contractor defense in its answer did not indicate federal jurisdiction because it performed work for non-federal governmental entities to which a government contractor defense might apply but which federal officer jurisdiction would not. Def.'s Opp'n to Mot. to Remand II 9. Defendant further argues that Plaintiffs' interrogatory response did not trigger the second thirty-day window because it only stated that her former husband worked on unspecified "ships," which was not enough to notify the Defendant that Plaintiffs' allegations related to the construction and repair of military ships. Id. at 3.

Under these circumstances, the Defendant's Answer and Plaintiffs' interrogatory response, assessed only on the basis of the contents of those documents, lacked the "substantial degree of specificity" needed to establish the existence of a

federal defense. <u>Foster</u>, 986 F.2d at 53.  First, Defendant's assertion of affirmative defenses standing alone would not be sufficient to trigger the second thirty-day window because Defendant must first receive another "paper" from which it can be ascertained that this case was removable. <u>See</u> 28 U.S.C. § 1446(b)(3).

Second, simply stating that Mr. Berger was exposed to asbestos at Lockheed while ships were repaired or newly constructed by Lockheed is insufficient even if read in conjunction with Defendant's government contractor defense. While Defendant's affirmative defenses do suggest that Defendant knew there was a possibility that a federal contract might be at issue, on the face of the documents at issue and without inquiring into the nature of Defendant's knowledge at the time of Plaintiffs' interrogatory response, the Court determines that these documents lacked the factual specificity required for removal based on 28 U.S.C. § 1442(a)(1). Defendant Lockheed, like other federal military contractors, performs activities that are protected by federal contractor immunity, and others that are not. <u>See</u> <u>Boyle v. United Techs. Corp.</u>, 487 U.S. 500, 512 (1988); <u>see also</u> Balch Decl. ¶ 3, Pls.' Mot. to Remand I Ex. B.18, 270-273 ("During the 1970s, Lockheed Shipbuilding Company (including its predecessor companies) constructed and repaired various vessels for both the U.S. Government and other non-

federal entities."). Until deposition testimony revealed which ships Mr. Berger had worked on during his employment, Defendant could not assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense.

The possibility that a federal contract would be at issue might satisfy the burden required for asserting an affirmative defense pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, but it is not sufficient when analyzing the appropriateness of federal officer removal jurisdiction. Rule 8(c) requires "a party [to] affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). The "so-called 'notice pleading' has always been the hallmark of Rule 8(c), which ultimately function(s) to provide the opponent with notice of the claim or defense pled." Tyco Fire Products L.P. v. Victaulic Co., 777 F. Supp. 2d 893, 897 (E.D. Pa. 2011) (Robreno, J.) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). As such, "an affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved." Id. at 900.

In contrast, a defendant is entitled to removal under § 1442(a)(1), only where "the defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him to a complete defense." Hagen, 739 F. Supp. 2d at 783. "These

facts may be cited in the answer, the notice of removal or in the response to a motion for remand." Id. at 778 n.8. The court is "not called upon at this preliminary stage [of removal] to pierce the pleadings or dissect the facts stated" because it is the "sufficiency of the facts stated--not the weight of the proof presented--that matters." Id. at 782.

Here, the Defendant was entitled to raise an affirmative defense putting Plaintiffs on notice of a federal government contractor defense without possessing the sufficient factual information necessary to properly remove based on § 1442(a)(1). If Defendant had removed without averring sufficient facts to remove under § 1442(a)(1), Defendant would have run the risk of a federal court finding that the removal was without merit and it may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal. See 28 U.S.C. § 1447(c). Defendant did not have a basis for removal until the nexus between Plaintiffs' claims and actions allegedly taken by Defendant under the direction of a federal officer was established. This nexus was not revealed until David Ludden testified at a deposition that Mr. Berger worked on two military ships while employed by Defendant—-the USS Frank Cable and the USCGC Polar Star. Ludden Dep. 13:21-14:23. Thus, Defendant's notice of removal was timely as it was filed on March 16, 2011, within thirty days of the February 22,

2011 deposition.

     B.  <u>Federal Officer Removal</u>

        Federal officers, and their agents, may remove cases based on acts performed under color of their federal office if they assert a colorable federal defense:

> A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office. . . .

28 U.S.C. § 1442(a); <u>Mesa v. California</u>, 489 U.S. 121, 129 (1989). A party seeking removal under § 1442 must demonstrate that (1) it is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office. <u>Hagen</u>, 739 F. Supp. 2d at 776 (citing <u>Feidt</u>, 153 F.3d at 127); <u>see also</u> <u>Jefferson Cnty.</u>, 527 U.S. at 431; <u>Mesa</u>, 489 U.S. at 124-25, 131-35.

        In <u>Hagen v. Benjamin Foster Co.</u>, the MDL Court rejected a seemingly "heightened" standard for removal pursuant

to § 1442(a)(1). 739 F. Supp. 2d 770, 785 (E.D. Pa. 2010)
(Robreno, J.). Rather, the Court held that proper jurisdiction
under the federal officer removal statute exists if the
defendant invoking it identifies facts which, viewed in the
light most favorable to the defendant, would establish a
complete defense at trial. Id.

    In light of these principles, the Court will assess
the four necessary elements for removal under § 1442(a)(1) in
turn.

### a.   A "person" acting under the direction of a federal officer

    To be considered "acting under" a federal officer, a
"person"—which is a term that includes corporate persons[8]—must
have done more than merely complied with a federal legal or
regulatory scheme. Watson v. Philip Morris Cos., 551 U.S. 142,
152 (2007). Rather, an entity "acts under" a federal officer
when it "assist[s], or help[s] to carry out, the duties or tasks
of the federal superior." Id. This necessary relationship exists
when a defendant's "actions that led to the lawsuit were based
on a federal 'officer's direct orders or comprehensive and

---

[8] This Court held in Hagen that "it is well settled that
corporations such as Defendants do qualify as persons under the
statute and that such non-government entities may seek removal
under Section 1442(a)(1) based on the government contractor
defense." 739 F. Supp. 2d at 776 n.6. Here Defendant, as a
corporation, qualifies as a person under Section 1442(a)(1).

detailed regulations.'" Hagen, 739 F. Supp. 2d at 784 (quoting Good v. Armstrong World Indus., Inc., 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)).

Here, Defendant asserts it was acting under the direction of a federal officer or agency, as evidenced by the detailed contracts signed by federal officers, the ongoing communications with the federal government during the shipbuilding process, and the level of control the government maintained over materials that would be incorporated into each ship's construction. See Balch Decl. ¶¶ 4-5 & Exs. A-C; Horne Aff. ¶¶ 4-17, Def.'s Opp'n to Mot. to Remand II Ex. 8. The affidavits and contracts submitted show (1) that the Military exercised direction and control over the design and manufacture of the subject vessels and (2) that the Military supplied substantial equipment that the Military itself required in the vessels. See Balch Decl. Ex. ¶¶ 4-5 & Ex. B (attesting that the contracts for the USS Frank Cable among other vessels had to be constructed in strict compliance with multiple Navy-issued specifications, including installing government furnished materials).

Plaintiffs do not dispute that Defendant has met these elements of the federal officer removal statute. The evidence Defendant provided, particularly the detailed contracts for the construction of Navy ships, when viewed in the light most

favorable to the Defendant establish that Defendant was operating under very specific instructions from the Navy, such that Defendant's actions comported with a federal officer's "comprehensive and detailed regulations." <u>Hagen</u>, 739 F. Supp. 2d at 784. Accordingly, the Court finds that Defendant was acting under a federal officer sufficient to satisfy Section 1442(a)(1)'s "acting under" requirement.

b.   <u>Colorable defenses</u>

Defendant relies on two separate and independent federal defenses to Plaintiffs' claims: (1) derivative sovereign immunity and (2) the government contractor defense. Plaintiffs argue that Defendant never averred facts demonstrating its entitlement to a derivative sovereign immunity defense[9] nor did it establish a causal nexus between plaintiffs' claims and the acts performed under color of federal law to justify removal based on the government contractor defense.

The government contractor defense displaces state law where "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States

---

[9] As the Court finds that the Defendant has properly raised a colorable government contractor defense, the Court need not reach whether it has also raised a colorable derivative sovereign immunity defense for the purpose of determining jurisdiction under the federal officer removal statute.

about the dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle, 487 U.S. at 512. The Boyle decision applied the government contractor defense to a design defect products liability claim, but it has since been extended to failure to warn claim products liability claims. See, e.g., Hagen, 739 F. Supp. 2d at 783; Tate v. Boeing Helicopters, 55 F.3d 1150, 1157 (6th Cir. 1995) (recognizing a distinction between applying the government contractor defense to design defect claims and failure to warn claims, but holding "the rationale for applying the government contractor defense to a failure to warn claim tracks the Boyle analysis closely"). However, in the context of failure to warn claims, a Defendant must identify facts demonstrating the government's approval "transcend[ed] rubber stamping" for the defense to shield a government contractor from liability. Hagen, 739 F. Supp. 2d at 783; Tate, 55 F.3d at 1156-1157.

Defendant has satisfied both the first and second prongs of the Boyle test. Plaintiffs assert strict and negligent products liability claims against Defendant: "Plaintiffs' claims against each defendant are based inter alia on strict products liability . . . including both design defect and failure to provide warnings and also based on negligence." Compl. ¶ 17. The affidavits Defendant submitted, as discussed above, assert that Defendant constructed and repaired ships on which Mr. Berger

25

allegedly worked not only pursuant to government contracts, but also in strict compliance with detailed specifications prepared and approved by the Government. See Balch Decl. ¶¶ 3-6 & Exs. A-E; Horne Aff. ¶¶ 4-5, 8, 11, 12, 17. Specifically, the affidavits state that Defendant built Navy ships "according to detailed specifications prepared, written, approved and issued exclusively by the Navy," Horne Aff. ¶ 5, and was "always required to do everything called for in the contract and specifications and always was prohibited from modifying the design or materials called for in the contract and specifications." Balch Decl. ¶ 3. Moreover, according to Defendant's evidence, the Navy assured that the equipment conformed to these specifications throughout construction or repair and delivery and acceptance of the ships was contingent upon full compliance with all specifications. Balch Decl. ¶¶ 3-7. Therefore, accepting the affidavits as true for the purposes of this motion, it is clear that the Navy was responsible for the design specifications of the ship and the finished equipment conformed to those specifications as demonstrated by the Navy's acceptance of each ship. This satisfies the first two elements of the government contractor defense.

Defendant also satisfies the first two elements of the government contractor defense with respect to Plaintiffs' claims of alleged failure to warn. Here, included in the detailed

specifications were instructions on how and whether any markings could be placed on the vessels. According to the affidavits, Defendant was not permitted to include "any instructions or warnings" because the Navy controlled the decision making with respect to instructions and warnings on every piece of equipment. Horne Aff. ¶¶ 13-16. Accordingly, it is clear that when the evidence is viewed in the light most favorable to the Defendant, the Navy was responsible for the alleged lack of warnings.

The affidavits submitted also satisfy the third element of the defense with respect to Plaintiffs' design defect and failure to warn claims. As the language of Boyle's third element indicates, the defense does not require the contractor to warn the government where "the government knew as much or more than the defendant contractor about the hazards of the ... product." Hagen, 739 F. Supp. 2d at 784 (quoting Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co., 883 F.2d 1210, 1216 (3d Cir. 1989)). Attesting from his experience as Chief Engineer and Deputy Commander for NAVSEA's Ship Design and Engineering Division, retired Rear Admiral of the United States Navy Roger B. Horne, Jr. states that in his opinion "military specifications mandated the use of asbestos-containing materials in the construction, maintenance and repair of Navy ships" and such mandates reflected the Navy's "superior knowledge to

27

private shipyards of the demands and requirements of combat-ready Navy vessels." Horne Aff. ¶ 6. He further states that "these specifications reflected the state of the art at the time and the special needs of combat vessels." Id. These attestations satisfy the third element of the defense insofar as it demonstrates that Defendant was not aware of any dangers that the Navy was unaware of. Thus, Defendant meets the third element of the government contractor defense, and has established a colorable federal defense.

    c.   <u>Causal nexus between the claims and the conduct performed under color of a federal office</u>

The final requirement for removal under Section 1442(a)(1) requires the defendant to demonstrate a causal nexus between the conduct performed under federal direction and Plaintiffs' claims. <u>See</u> <u>Mesa</u>, 489 U.S. at 131-34. To do so, a defendant seeking removal must "by direct averment exclude the possibility that [the defendant's action] was based on acts or conduct of his not justified by his federal duty." <u>Id.</u> at 132 (quoting <u>Maryland v. Soper (No. 1)</u>, 270 U.S. 9, 33 (1926)). In <u>Hagen</u>, this court held that the causal nexus requirement becomes redundant where a "defendant in a government contractor case makes out a colorable federal defense" because the causal nexus analysis "'is essentially the same [as that associated with] the colorable defense requirement." <u>Id.</u> (quoting <u>Prewett v. Goulds</u>

Pumps (IPG), No. 09-0838, 2009 WL 2959877, at *7 (W.D. Wash. Sept. 9, 2009)).

As argued above, Defendant has a colorable federal defense that any design defects or failure to warn relates to the Navy's extensive supervision and control over the ships Defendant manufactured for the government. Thus, the necessary causal connection exists because the liability Defendant faces arises from its official duties, performed in accordance with valid government contracts.[10]

At this stage of the proceedings, the facts identified in the affidavits provided, when viewed in the light most favorable to Defendant, demonstrate that Defendant has satisfied

---

[10] Plaintiffs argue that Defendant has not met the required causal nexus because it did not provide any direct averment to "exclude the possibility that [the defendant's action] was based on acts or conduct of his not justified by his federal duty." Pls.' Mot. to Remand II 14. Plaintiffs state that under applicable state and federal requirements in effect in 1976-1977, the Navy largely required contractors to take action to protect workers and their families from asbestos in shipyard contracts. Id. at 15-16. Plaintiffs maintain that Defendant cannot invoke the mandate of government specifications in this case because Mr. Berger supposedly worked at Lockheed Shipbuilding in 1976-1977 when Defendant would have been required to warn workers about asbestos. Id. It is possible that further proceedings will demonstrate that Defendant is in fact not entitled to a government contractor defense based on Plaintiffs' theory, but at this stage of the proceedings, Defendant is not required to prove such facts. It is enough for removal pursuant to § 1442(a)(1) that a single affidavit viewed in the light most favorable to Defendant presents a plausible assertion that Defendant is entitled to a complete defense. See Hagen, 739 F. Supp. 2d. at 784 (ruling that the Court is not required to "determine the credibility, weigh the quantum of evidence or discredit the source of the defense").

all necessary requirements for removal under § 1442(a)(1). <u>See</u>
<u>Hagen</u>, 739 F. Supp. 2d at 782-83. Therefore, Plaintiffs' motion
to remand will be denied.

**IV. CONCLUSION**

For the foregoing reasons, the Court will deny
Plaintiffs' Motion to Expedite Remand and Motion for Remand. An
appropriate order will follow.